The State ex rel. Sligo Iron Store Company v. Mason.

THE STATE *ex rel.* SLIGO IRON STORE COMPANY V. MA-
SON *et al., Appellants.*

**Equity of Redemption**: HOMESTEAD IN. A owned as a homestead
in the city of St. Louis, property worth $5,500, on which he had
executed a deed of trust to secure a debt for $3,500. *Held,* he was
entitled to a homestead in the equity of redemption. Distinguish-
ing *Casebolt v. Donaldson,* 67 Mo. 308.

*Appeal from St. Louis Court of Appeals.*

REVERSED.

*Krum & Jonas* for appellants.

(1) The circuit court and court of appeals erred in
holding that the homestead act, upon a fair construction,
does not provide for the appointment of appraisers and
the setting apart of a homestead by a sheriff, when prop-
erty on which there is a homestead is levied upon by him
under a writ of attachment in his hands. R. S., sec. 2690 *et
seq.; Vogler v. Montgomery,* 54 Mo. 583; *State, etc., v.
Diveling,* 66 Mo. 379; *Casebolt v. Donaldson,* 67 Mo.
311; *Lamb v. Mason,* 50 Vt. 352; *State, etc., v. Emer-
son,* 39 Mo. 89. (2) The respondent, if dissatisfied with
the action of the sheriff and appraisers, could have pro-
ceeded by motion to quash the proceedings. *Creath v.
Dale,* 69 Mo. 41; R. S., sec. 2698; *Schaeffer v. Belds-
meier,* 9 Mo. App. 445. (3) In the absence of any action
being taken by respondent with reference to the claim of
the homesteader, the report of the appraisers was con-
clusive. *Schaeffer v. Beldsmeier, supra;* Thompson on
Homesteads, sec. 667. (4) It was error in the courts be-
low to assume that an attaching or judgment creditor
seeking to enforce his debt could compel a severance of
the mortgage and the property which protected it.

*Taylor & Pollard* for respondent.

(1) The sheriff exceeded his authority by setting out and releasing the realty as a homestead to Sheehan, before judgment and levy of execution. R. S., secs. 2690-2. (2) The statute gave the sheriff no authority to appoint appraisers to set out a homestead in the realty, held under the levy of attachment. Such appraisers can only be appointed after judgment and levy of execution. (3) Revised Statutes, section 2689, defines specifically the kind of homestead which shall be exempt to "every housekeeper or head of a family." The limitation as to value is as much a matter of description as the provision relating to quantity, occupation, or ownership. *Beecher v. Balsly,* 7 Mich. 499; *Helfenstein v. Case,* 3 Ia. 287. Thompson on Homestead, 112-114. (4) Even if it be held that the sheriff has the right, when an attachment is levied, to release the homestead before judgment and execution, still, in doing this he acts at his peril, and if he makes a mistake as to the law, his good intention will not relieve him from damages to the injured party. *State ex rel. v. Mason,* 15 Mo. App. 141. (5) Sheehan having incumbered all the realty in question, for $3,500, it not being susceptible of division, and worth $7,500, could not prevent the incumbrance from being chargeable against his homestead interest, in part, as well as against the excess of value over said homestead; The true rule, in such case, is to charge the incumbrance *pro rata* against both the homestead value, and the excess over the homestead value. This is the rule followed in Vermont, from whence our homestead law was borrowed. *Skouten v. Woods,* 57 Mo. 380; *Lamb v. Mason,* 50 Vt. 345; *Devereaux v. Fairbanks,* 50 Vt. 760; *Gregg v. Bostwick,* 33 Cal. 225; *Searle v. Chapman,* 121 Mass. 19. (6) The usee was damaged by the act of the sheriff, in releasing the realty without authority of law. This

entitles it to recover damages on the sheriff's bond. Binsmore on Sheriffs, 98; *Cogswell v. Mason*, 9 N. H. 48; Gwynne on Sheriffs, secs. 569, 572; *Kean v. Newell*, 1 Mo. 418; *Berry v. Shackett*, 37 Mo. 284.

HENRY, C. J.—The plaintiff sued Mason and his sureties on his bond as sheriff for an alleged breach of said bond, in releasing from an attachment the property of one Daniel T. Shehan, in the city of St. Louis, which had been levied upon by said sheriff, under an attachment issued in a certain cause in which relator herein was plaintiff, and Shehan was defendant. The property was claimed by Shehan as his homestead, and was of the value of $5,500, but was encumbered by a deed of trust executed by Shehan and wife to secure a debt of $3,500. On the claim of homestead made by Shehan the sheriff appointed appraisers, who reported that the property was of the above value and was not susceptible of division. Thereupon the sheriff released the property from the levy, and before final judgment in the cause Shehan sold it to a third person. On the above facts the circuit court found for the respondent and rendered judgment accordingly, which, on appeal to the court of appeals, was affirmed, and the sheriff and his sureties have appealed to this court.

In the view we take of this case it is wholly immaterial whether the sheriff acted prematurely or not, in having the property appraised before final judgment in the attachment cause and execution thereon. If Shehan was entitled to a homestead in the property to the extent of the excess of the value over the mortgage, the sheriff did right to release it from the levy, and would have been in no default if he had made no levy at all. The homestead act secures to every housekeeper or head of a family "a dwelling house and appurtenances and the land used in connection therewith not exceeding the amount and value herein limited, which is, or shall be,

used by such housekeeper or head of a family as such homestead, together with the rents, issue, and products thereof," exempt from attachment and execution. "In cities having a population of forty thousand or more, such homestead shall not include more than eighteen square rods of ground, or exceed the total value of three thousand dollars." Sections 2690, 2691 and 2698, recognize a homestead right in property which exceeds in value three thousand dollars, but not the quantity, eighteen square rods. Section 2691 provides that, "If at the time of any such levy of execution, the homestead or real estate mentioned in the preceding section shall be encumbered by mortgage, the value and location of such homestead shall be fixed, as provided in said section, and thereupon such levy shall proceed in the same manner as in the case of mortgages existing upon distinct parcels of land." The entire act throughout its provisions manifests a purpose to secure to the head of a family a certain amount of property in extent and value exempt from attachment and execution, so that whatever calamity might befall him in his trade or speculations, his family should have a home. It authorizes him to sell his homestead, and with the proceeds of sale procure another. If it exceeds in value three thousand dollars in a city of forty thousand inhabitants, why may he not sell the excess and retain the balance as a homestead? and if he may sell, why may he not mortgage the excess without forfeiting his homestead claim in the balance?

The cases relied upon by the court of appeals are, *Lamb et al. v. Mason*, 50 Vt. 345, and *Devereaux v. Fairbanks et al.*, *Ib.* 700. In those cases the homesteader had mortgaged his homestead, and judgment creditors paid off the mortgage, and it was held that the homestead should bear its proportion of the mortgage debt. That by thus paying the mortgage they became

subrogated to the rights of the mortgagee, and could en-force against the homestead the payment of its proportion of the mortgage debt.    Ross and Duncan, JJ., dissented, and these opinions appear to be in conflict with *Morgan v. Stearn*, 41 Vt. 398, cited in the dissenting opinion.    A case similar, in some respects, to the two reported in 50 Vt. is reported in 79 Mo. page 47, *Hall v. Morgan*. Morgan, the defendant, owned an eighty acre tract, the eastern half of which he mortgaged to a company to secure five hundred dollars, his wife relinquishing her dower.    Subsequently he conveyed, by warranty, the eastern forty, so mortgaged, to his son Dick, for the con-sideration of one thousand dollars.    Morgan died, and plaintiff had a demand of four hundred dollars probated against his estate.    Dick Morgan, during the pendency of a suit to foreclose the mortgage, sold the east forty to plaintiff for eight hundred dollars, as follows: One hun-dred and ninety-five dollars in money, and a horse, credit-ing the probated claim to the amount of two hundred and seventy-five dollars, aggregating four hundred and fifty dollars, leaving a balance of three hundred and fifty dol-lars.    It was agreed between plaintiff and Dick that the east forty was only to bear its just proportion of the mortgage debt, which proportion, it was supposed, would amount to three hundred and fifty dollars, and the deed from Dick to plaintiff contained the words: "subject to the mortgage."    After the death of Wesley G. Morgan, the west forty was set off to the widow and minor chil-dren as a homestead, and plaintiff's suit was to subject the west forty to the payment of its just proportion of the mortgage debt, and this court held that he was en-titled to the judgment he asked.    The Vermont cases differ from the case at bar, in that a judgment creditor who has paid off the mortgage is not here seeking to be subrogated to the rights of the mortgagee, and the case of *Hall v. Morgan* differs from this in that there a *bona fide* purchaser of a part of the land mortgaged sought

to have the other portion of the land charged with its fair proportion of the incumbrance. As to that debt, the homestead exemption was waived and every part and parcel of it was bound for the debt.

Conceding that the son was a *bona fide* purchaser for a full consideration, it would have been inequitable to allow the father to shift the burden of the mortgage debt upon the forty sold to his son, who had a right to have each tract charged with the burden originally imposed upon both by a valid conveyance and his grantee succeeded to all his rights. The case under consideration presents no such equities in favor of the attaching creditors. They have not, as in the Vermont cases, paid the mortgage debt and entitled themselves to be subrogated to the rights of the mortgagee, who held his mortgage upon the property unaffected by the homestead right, which, in fact, so far as that debt was concerned, had no existence. They are not, as in *Hall v. Morgan*, subsequent purchasers of a part of the incumbered property. They are not, as in *Casebolt v. Donaldson*, 67 Mo. 311, seeking to subject to their claim a surplus of money in the hands of a purchaser of the homestead under a deed of trust, executed by the person having the homestead right, but they assert the right while the mortgage is a subsisting incumbrance to levy their attachment and run their execution against the homestead, and have the equity of redemption, say two thousand dollars, charged with its proportion of the mortgaged debt, and the balance applied in payment of their claim, and thus extinguish all right of a debtor to a homestead.

In *Morgan v. Stearns*, 41 Vt. 398, the court said: "The essential condition of this right and interest is ownership and occupancy by the husband and the family, and the statute applies to an equitable, as well as legal, ownership, an incumbered as well as an unincumbered estate." Our statute, section 2691, recognizes the right

to a homestead in an equity of redemption, and we are not impressed by the argument based upon the distinction between a mortgage and a deed of trust, "that the mortgage passes the title and a deed of trust does not." If the claimant has a homestead in an equity of redemption, we perceive no good reason why he has not in the premises, subject to the deed of trust. He may sell his homestead. His creditors have no concern with it. He may give it away, and they are not prejudiced. He cannot commit fraud upon them by any disposition he may make of it. If he occupies a dwelling house as a homestead of eighteen square rods or less, of a value exceeding three thousand dollars, the excess may be reached by creditors on execution, and the balance in money or kind, by the provision of the statute, constitutes his homstead. If creditors may thus reach the excess on execution, why may he not sell that excess to a creditor without forfeiting his homestead right in the balance? Why may he not mortgage it to a creditor if he may sell it, without losing his homestead right? He may dispose of his homestead at his pleasure and the excess of the value or quantity is his at his disposal, the same as other property he may own detached from the homestead. As to such property he stands precisely as to any other owner of property.

The opinion of the court of appeals was delivered by Thompson, J., and it is with some hesitancy, and only after a careful examination of the authorities, that we have come to a conclusion different from that reached by that court. The judgment is reversed. All concur, except Norton, J., who dissents.